IRVING, P.J.,
for the Court:
¶ 1. On August 9, 2011, the Madison County Chancery Court established a con-servatorship for Medora Weaver. Caryn S. Quilter, Weaver’s niece, filed a petition for conservatorship and requested that the chancery court appoint her as conservator. John A. Salter, Weaver’s older brother and Quilter’s father, initially agreed that a con-servatorship should be established, but he requested that the chancery court appoint him as conservator. Because of the conflict between Salter and Quilter, the chancery court appointed Arthur Johnston, Madison County’s Chancery Clerk, as conservator. Feeling aggrieved, Salter appeals and argues that the chancery court erred in establishing a conservatorship for Weaver. Alternatively, Salter argues that, in the event that a conservatorship is needed, the chancery court erred in appointing Johnston as conservator.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. Weaver lived in Houston, Texas. After Weaver’s husband died, Quilter began visiting Weaver at her home. Based on numerous reports concerning Weaver’s health from Weaver’s friends and neighbors, Quilter decided that it would be in Weaver’s best interest for Weaver to relocate to Mississippi, where Quilter lived. Weaver moved from Texas to an assisted-living facility in Ridgeland, Mississippi, in June 2011. On August 4, 2011, Quilter petitioned the chancery court to establish a conservatorship for Weaver and appoint her as conservator. Quilter attached to the petition certificates from Dr. Rebekah Moulder, a general practitioner, and Dr. Heath Gordon, a psychologist. Both stated that they had personally examined Weaver and believed that “because of [Weaver’s] physical incapacities and infirmities, she is unable to attend to her physical needs or to manage her own financial affairs and estate.”
¶ 4. Salter filed a counterpetition, agreeing that a conservatorship was needed but requesting that he be appointed conservator. At the hearing on Quilter’s petition and Salter’s counterpetition, Salter testified that he had previously served as a conservator for his mother before her death. He also claimed that Weaver had repeatedly requested that he serve as her conservator.
¶ 5. Quilter testified that she had a longstanding relationship with Weaver. She noted that Weaver gave her a power of attorney before moving to Mississippi, which she has used to oversee the management of Weaver’s assets and to obtain and maintain lodging for Weaver at the assisted-living facility. Quilter stated that “everything was just fine” between her and Weaver until two weeks before the hearing. She believed that Weaver’s attitude towards her changed as a result of Salter’s interference. Given Salter and Quilter’s contentious relationship, Quilter did not believe that giving them joint responsibility for Weaver would work.
¶ 6. The chancery court allowed Weaver to make a statement during the hearing. She confessed to the court that her “mind is not as clear as it used to be” but that she remembered being a school teacher. Weaver claimed that when Quilter started mentioning that she wanted to visit, she did not know her that well. Weaver accused Quilter of stealing from her and *1132 kidnapping her from her home in Texas. Weaver later told the court that her doctors had told her that she had Alzheimer’s disease and that she would not live much longer.[1]
¶ 7. Based on the testimony offered during the hearing and the certificates provided by Dr. Moulder and Dr. Gordon, the chancery court determined that a conser-vatorship should be established for Weaver. Additionally, the court determined that it was in Weaver’s best interest that the conservator be “an objective, non-related person,” and appointed Johnston as conservator.
¶ 8. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 9. An appellate court will affirm a chancery court’s decision if it is supported by “substantial credible evidence.” In re Estate of Carter, 912 So.2d 138, 143 (¶ 18) (Miss.2005) (citing Williams v. Williams, 843 So.2d 720, 722 (¶ 10) (Miss. 2003)). Appellate courts “will not interfere with the findings of the [chancery court] unless the [court] was manifestly wrong, clearly erroneous[,] or applied the wrong legal standard.” Id. (citing Williams, 843 So.2d at 722 (¶ 10)).

1. Conservatorship

¶ 10. Salter maintains that the chancery court erred in finding that a conservator-ship was in Weaver’s best interest. Mississippi Code Annotated section 93-13-251 (Supp.2011) allows the chancery court to appoint a conservator over the estate and the person of one who “is incapable of managing his own estate by reason of advanced age, physical incapacity[,] or mental weakness. ...”
¶ 11. Here, there is substantial evidence to support the chancery court’s finding that a conservatorship was in Weaver’s best interest. First, Salter initially agreed with Quitter’s petition to establish a conservatorship for Weaver. In fact, at the hearing on the petition for conservatorship, Salter’s attorney noted:
Well, the question then is: Who is to be the conservator? My client doesn’t, again, object that Ms. Weaver does need a conservatorship. It’s just that he wishes to be the conservator. It is his understanding that the ward also seeks that he be the conservator.
¶ 12. Secondly, before determining that a conservatorship was in Weaver’s best interest, the chancery court examined Dr. Moulder’s and Dr. Gordon’s certificates. Both doctors stated that they had personally examined Weaver and believed that she was incapable of attending to her physical needs and managing her financial affairs and estate. Additionally, Weaver admitted to the court that she had been diagnosed with Alzheimer’s disease and that her mind was no longer clear. Based on these facts, the chancery court did not err in finding that a conservatorship was in Weaver’s best interest. This issue is without merit.
£ Conservator
¶ 13. Salter alternatively contends that, if a conservatorship is needed, he is the proper party to act as conservator. He bases this contention on the fact that Weaver has requested that he act as conservator and on the fact that he has previous experience as a conservator. Salter also contends that he should be given pref *1133 erence as conservator because he is Weaver’s brother.
¶ 14. We note at the outset that our laws concerning conservatorships give no preference to an individual’s next-of-kin to act as conservator. See Miss.Code Ann. §§ 93-13-251 to -267 (Rev.2004 & Supp. 2011). Furthermore, the chancery court determined that it would be in Weaver’s best interest if a non-relative served as conservator after hearing testimony regarding the contentious relationship between Salter and Quitter. Given these facts, the chancery court did not err in appointing Johnston to serve as conservator. This issue is without merit.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, RUSSELL AND FAIR, JJ., CONCUR. BARNES, CARLTON AND MAXWELL, JJ., NOT PARTICIPATING.

. The record does not contain Weaver's age.